UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

TLC HEALTH NETWORK,

Debtor.

Case No. 1-13-13294-CLB

Chapter 11

---

## INTERIM ORDER GRANTING MOTION: (I) AUTHORIZING THE DEBTOR TO INCUR POST-PETITION SECURED SUPER-PRIORITY INDEBTEDNESS PURSUANT TO SECTIONS 105(a), 362, 364(c)(1) AND (2); (II) MODIFYING THE AUTOMATIC STAY (III) AUTHORIZING USE OF CASH COLLATERAL; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)

The above-captioned debtor, TLC Health Network, debtor in possession in the above captioned case ("TLC" or the "Debtor"), having filed on December 16, 2013 its motion for the entry of Interim and Final Orders, pursuant to sections 105(a), 362, 363(c), 364(c)(1) and (2) of the United States Bankruptcy Code (the "Bankruptcy Code"), (I) authorizing the Debtor to incur certain post-petition indebtedness on a secured and super-priority basis from Brooks Memorial Hospital ("Brooks" or "Lender"), (II) modifying the automatic stay, (III) authorizing use of cash collateral in which Brooks, Community Bank, N.A. ("Community"), UPMC, and the Dormitory Authority of the State of New York ("Authority") (Brooks, Community, UPMC, and the Authority are referred to collectively as the "Secured Creditors") have an interest, pursuant to sections 361, 362, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure (the "FRBP") 4001, and (IV) scheduling a final hearing pursuant to FRBP 4001(b) and 4001(c) (the "Motion")[1]; and

The Debtor having filed the Declaration of the Chairman of the Board of the Debtor, Timothy J. Cooper, which explained that the Debtor has an immediate need for financing to

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

enable the Debtor to continue to wind down its operations and market and sell the certain real and personal property and avoid immediate and irreparable harm to the Debtor's estate; and

On December 23, 2013, the Court held an interim hearing on the Motion at which the Court heard (i) the Debtor, by its attorneys, Menter Rudin & Trivelpiece, P.C. (Jeffrey A. Dove, Esq.), (ii) Brooks, by its attorneys, Hodgson Russ, LLP (James C. Thoman, Esq.), and (iii) the Office of the U.S. Trustee for the Western District of New York (Joseph W. Allen, Esq.), and after the deliberation, and for good and sufficient cause appearing therefor:

## FINDINGS OF FACT

The Court hereby makes the following findings of fact:

A.    The Debtor has an urgent, immediate and continuing need for the financing provided by Brooks pursuant to the Operating Line and the Construction Line, and for the use of cash collateral, namely, the operation of its health care facilities, treatment of patients, the marketing and sale of the Debtor's assets, funding the administrative expenses, including professional fees, during the bankruptcy proceeding and preservation and maximization of the value of the Debtor's estate. Without the ability to access the Operating Line and Construction Line, and without authority to use cash collateral, the Debtor would not be able to continue to operate in Chapter 11, execute its wind down of operations, market or maximize the value of its assets.

B.    The Secured Creditors claim to have valid, duly recorded liens on certain of TLC's personal property, including its equipment, inventory, certain accounts receivable, and proceeds thereof as well as TLC's general intangibles. The Secured Creditors assert that their collateral includes, among other things, TLC's present and future cash collateral, as such term is defined in Section 363 of the Bankruptcy Code (the "Cash Collateral"). The Secured Creditors

058618.00012 Business 12306463v1

assert that the Debtor may not use Cash Collateral unless the interests of the Secured Creditors are adequately protected.

C.   As of the Petition Date, TLC was obligated and indebted to the Secured Creditors in the approximate amounts of:

| | |
|---|---|
| UPMC | $1,267,767.36 |
| Community | $32,464.04 |
| Authority | $263,524.37 |
| Brooks | $345,000.00 |

together with accrued and unpaid interest thereon (the "Pre-Petition Indebtedness.")[2]

D.   The Debtor has explored other available financing opportunities and does not believe that it could obtain post-petition credit from other sources on similar or as favorable terms. The Debtor is unable, in the ordinary course of business or otherwise, to obtain unsecured credit allowable pursuant to Section 503(b)(1) of the Bankruptcy Code as an administrative expense or pursuant to Sections 363 or 364(a) or (b) of the Bankruptcy Code in an amount necessary for the maintenance and preservation of its assets and operation of its businesses, or secured indebtedness pursuant to Section 364(c) of the Bankruptcy Code on more advantageous terms than those offered by Brooks pursuant to the terms of this Interim Order. The terms of the financing provided by Brooks are as, or more, favorable to the Debtor -- considering price and other terms -- than those which would be available from other sources.

E.   Brooks is willing to extend credit and other financial accommodations to the Debtor only upon the terms and conditions set forth in this Interim Order.

---

[2] The Debtor's obligation to UPMC arises from its guaranty of a debt owed by its corporate parent, Lake Erie Regional Health Systems of New York ("LERHSNY") to UPMC. In addition to the direct debt owed by the Debtor to Brooks, the Debtor also owes indemnity obligations to Brooks for monies loaned to LERHSNY by UMPC and utilized by the Debtor, as well as unsecured claims for shared services.

058618.00012 Business 12306463v1

F. Brooks has indicated a willingness to provide post-petition secured financing to the Debtor under the Operating Line Agreements, the Construction Line Agreements, and in accordance with the terms of this Interim Order. The terms and conditions of the Operating Line Agreements, the Construction Line Agreements, and this Interim Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The Operating Line Agreements and Construction Line Agreements were negotiated in good faith and at arm's length among the Debtor and Brooks, each with the assistance of counsel, and the Operating Line Agreements and Construction Line Agreements shall be deemed to have been extended by Brooks for valid business purposes and uses and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and the Liens, the super-priority administrative claims, and the other protections afforded the Lender shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

G. The notice of the interim hearing on the Motion was provided pursuant to FRBP 4001(b)(2) and (c)(2) and found to be adequate and sufficient. The Debtor provided the following parties notice by electronic mail or overnight mail: (i) the Office of the United States Trustee; (ii) counsel to UPMC; (iii) Community Bank, N.A.; (iv) the Authority; (v) counsel for Brooks, (vi) the Attorney General for the State of New York; (vii) the Internal Revenue Service, and (viii) the creditors holding the 20 largest unsecured claims against the Debtor's estate. The Debtor believes the notice of the interim hearing was the best available under the circumstances.

4

## BACKGROUND

The Debtor and Brooks stipulate and agree as follows:

A.    <u>Description of Post-Petition Credit</u>. The Debtor and Brooks have agreed that, in order to facilitate the completion of construction of an urgent care clinic in Gowanda, New York, the marketing and sale of the Debtor's assets, the continued operation of the Debtor's health care businesses until an orderly wind down or transfer of its operations can occur, and to maximize the value of the Debtor's assets, the Debtor requires the use of Cash Collateral and the extension of post-petition financing through the Operating Line Agreements and Construction Line Agreements (collectively referred to as the "Facility"). The Facility includes:

(a)    The Construction Line Agreements, consisting of a Demand Grid Note in the amount of $1,626,000 issued by the Debtor to Brooks, a Building Loan Agreement, a General Security Agreement, and a $1,626,000 Mortgage on the Gowanda and Forestville real property owned by the Debtor. The Construction Line component of the Facility will be used to fund the construction costs of the Debtor's urgent care clinic in Gowanda.

(b)    The Operating Line Agreements, consisting of a Demand Grid Note in the amount of $1,000,000 issued by the Debtor to Brooks, a General Security Agreement, and a $1,000,000 Mortgage on substantially all of the Debtor's real property excluding the Gowanda and Forestville parcels.

(c)    All amounts loaned or credit advanced to or on behalf of the Debtor pursuant to the Facility, together with any other post-petition indebtedness due the Lender thereunder, is sometimes hereinafter referred to as the "Indebtedness." The Indebtedness will be governed by the terms of this Interim Order and certain documents as described below, together

058618.00012 Business 12306463v1

with any amendments or modifications thereto or replacements or substitutions therefor (collectively, the "Loan Documents").

B. <u>Contingencies</u>. The Facility is contingent upon the following conditions:

(i) Lenders' receipt of corporate resolutions authorizing the Debtor's entry into the post-petition borrowing;

(ii) no Material Adverse Event shall have occurred;

(iii) the Court's entry of a final order, in form and content acceptable to Lender, approving and authorizing the Debtor to incur the Indebtedness; and

(iv) the Court's entry of an order approving the Debtor's payment of the Lender's expenses.

C. <u>Interest and Fees</u>. The Indebtedness shall bear interest at the rates set forth in the Loan Documents from the date incurred until paid in full. The Loan Documents shall provide for the payment of (a) current interest on the Indebtedness, and (b) certain fees.

D. <u>Security Interest in Substantially All Assets of Debtor to Secure Post-Petition Indebtedness</u>. The Indebtedness shall be secured by, and the Debtor has agreed to grant, effective as of the Petition Date, to Brooks, a valid and perfected lien on, and security interest in, any and all of the Debtor's personal property and fixtures, wherever located, whether now existing or owned or hereafter arising or acquired as more fully set forth in the Loan Agreement as well as a first priority lien in the real property identified in the mortgages (collectively, the "Collateral").

E. <u>Consent to Liens</u>. The Debtor has consented to the validity and priority of Brook's security interest in and lien on the Collateral and the validity of the Post-Petition

058618.00012 Business 12306463v1

Indebtedness to the extent actually advanced to or on behalf of the Debtor and interest, fees, costs and expenses payable in accordance with the terms of the Loan Documents.

F.  Maturity Date.

(a)  The availability of the Facility shall immediately and automatically terminate, and the Indebtedness, together with any then outstanding interest, fees, costs, expenses or other amounts payable in connection therewith or under this Interim Order, shall be immediately due and payable in full upon the earliest to occur of the following:

(i)  February 1, 2014;

(ii)  sale of all or substantially all of the Collateral; or

(iii)  a post-petition default under the terms of the Loan Documents.

(b)  Notwithstanding any termination of availability or any amounts becoming due and payable pursuant to subparagraph (a) hereof, the rights and obligations of the Debtor and the rights, claims, security interests, liens, and priorities of Brooks with respect to all transactions which occurred prior to the occurrence of such termination or maturity shall remain unimpaired and unaffected by any such termination or maturity and shall survive any such termination or maturity.

G.  Termination of Lending and Exercise of Remedies.  Upon notice to the Debtor (in accordance with the Loan Documents) of the occurrence of a default, as specified in the Loan Documents, Brook's obligation to lend under the Loan Documents shall terminate and all Indebtedness shall be due and owing in full (the "Termination Date").

H.  No Waiver of Rights.  The Lender retains all rights available pursuant to the Bankruptcy Code or any other applicable law, including without limitation its rights, if any, to seek additional restrictions upon the Debtor's business activities or use of the proceeds of the

financing described herein, to seek termination or modification of this Interim Order, to seek termination or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (to the extent not already modified as set forth herein), or to seek to terminate the Debtor's exclusivity periods pursuant to Section 1121 of the Bankruptcy Code. The Debtor retains the right to contest or defend against any such requests by Brooks.

      I.    <u>Access to Premises, Books, and Records</u>. The Debtor and its professionals have agreed to grant Brooks and its representatives reasonable access to any of Debtor's business premises, books, and records upon prior notice in accordance with the Loan Documents.

      J.    <u>Availability of Funds</u>. The Indebtedness, and any advances, borrowings or extensions of credit thereunder by Brooks to the Debtor, shall be conditioned upon the observance and performance by the Debtor of the terms, conditions, covenants, and agreements specified in this Interim Order and the Loan Documents.

      K.    <u>Professionals</u>.

      (a)    No professional, as such term is defined in the Bankruptcy Code, shall be retained by the Debtor or any Chapter 7 or 11 trustee specifically to preserve or liquidate the Collateral without the prior written consent of Brooks or further Order of this Court after notice to Brooks and a hearing thereon, and the provisions of Sections 506(c) and 552 of the Bankruptcy Code shall not be imposed upon Brooks or the Collateral in connection with such preservation or liquidation without its consent; <u>provided</u>, <u>however</u>, so long as the Debtor is not in default under the Loan Documents, the Debtor shall be permitted, notwithstanding any security interests or liens heretofore or hereafter existing with respect to property of the Debtor, to pay administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code incurred in the ordinary course of the Debtor's businesses in accordance with the budget attached hereto

8

as Schedule "1" ("Budget"), and compensation and reimbursement of expenses authorized under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable; provided, however, nothing herein shall be construed to grant such claimants a claim under Section 506(c) of the Bankruptcy Code or otherwise against Brooks or the Collateral for any unpaid fees and/or expenses.

(b)     Nothing in the foregoing shall make the Debtor's retention of professionals, for purposes other than specifically to preserve or liquidate the Collateral, subject to the consent of Brooks, although the Debtor will give the Lender and any Creditors' Committee notice of such applications.

(c)     So long as the Termination Date shall not have occurred, the Debtor shall be permitted to pay administrative expenses in the ordinary course of its business, including payment of United States Trustee's fees and allowed professional fees.

L.     Notice.  Any notice which may be required under the Loan Documents shall be done in accordance therewith.

## **ORDER**

Based upon the preceding Findings of Fact, it is ORDERED, ADJUDGED AND DECREED as follows:

1.     Core Proceeding.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (D), (G), (K), and (M) and, therefore, this Court has jurisdiction over this proceeding and the property affected thereby and hereby.

2.     Good Faith.  This Interim Order is subject to, and the Lender is entitled to the benefits of the provisions of, Section 364(e) of the Bankruptcy Code.

9

3.    <u>Recitals</u>.   All of the Findings of Fact and stipulations set forth above are incorporated by reference into this Order, and the Debtor represents and warrants to Brooks that the statements therein are true and correct.

4.    <u>Motion Granted</u>.   The Motion is hereby granted as set forth herein, on an interim basis.

5.    <u>Execution of DIP Loan Documents</u>.   The Debtor is authorized to and shall execute and deliver to Brooks such loan documents as are reasonably necessary to memorialize the terms described in the Motion, on an interim basis, and such other instruments as Brooks shall request in order to effectuate the loan, liens, encumbrances, assignments, and security interests created by same, together with the other instruments and documents to be executed in connection with the Loan Documents.   The Debtor is also authorized, empowered and directed to execute and to deliver such other documents and agreements, and to take all necessary actions, to complete and to effectuate the financing directed by this Interim Order.

6.    <u>Authorization to Incur Post-Petition Indebtedness</u>.   The Debtor is hereby authorized to use cash collateral and to incur post-petition indebtedness under the Loan Documents (the "Indebtedness") pursuant to the terms and conditions to be incorporated in the Loan Documents and in accordance with the provisions of this Interim Order.

7.    <u>Use of Funds</u>.   Attached to the Motion as Exhibit O is a line item budget (on a weekly basis) (the "Budget"), which has been prepared by TLC and which reflects the use of funds under the Operating Line and Construction Line.   The Debtor is authorized to use Cash Collateral and incur Indebtedness through the date of the Final Hearing (as specified below) in an aggregate amount equal to the amounts in the Budget with a variance of 7% per line item permitted; <u>provided</u> that such use shall be exclusively in the ordinary course of the Debtor's

058618.00012 Business 12306463v1

business (which shall include payment for construction costs under the Construction Line) and only for those items set out in the Budget. The Debtor and the Secured Creditors may mutually agree to amend the Budget at any time without further Court order. The Debtor's authority to use Cash Collateral shall terminate on the earliest to occur of: (i) the date of the Final Hearing, unless extended by Court order, (ii) the entry by this Court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of this Order, (iii) the conversion of the Debtor's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code, (iv) the appointment of a trustee or examiner or other representative with expanded powers for the Debtor, or (v) the occurrence of the effective date or consummation of a plan of reorganization. Notwithstanding this authorization, the Debtor shall not use Cash Collateral for the payment or satisfaction of any expense that will result in the Debtor spending more than 107% of any line item amount budgeted for such period.

8. <u>Reporting</u>. On or before each Tuesday, the Debtor shall provide the Secured Creditors, who request such reporting, a weekly accounting (in the same form as the Budget) itemizing the Indebtedness incurred and Cash Collateral used for the preceding week and the projected collections and uses of Cash Collateral for the current week. Additionally, the Debtor shall provide the Secured Creditors with such financial reports and information as is required under any applicable loan documents and as otherwise reasonably requested by the Secured Creditors.

9. <u>Access</u>. The Debtor shall permit agents of the Secured Creditors to inspect the Debtor's books, records, assets, and facilities, and to make copies or abstracts from the books and records, during regular business hours, except that the Debtor reserves its rights not to share proprietary or statutorily protected information without appropriate safeguards.

058618.00012 Business 12306463v1

10. <u>Good Cause for Entry of Order</u>. Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Interim Order will minimize the disruption of the Debtor's existing business, will enable the marketing and sale of substantially all of the Debtor's assets, and is in the best interests of the Debtor, its creditors, patients, and other parties in interest herein.

11. <u>Fair Terms; Reasonably Equivalent Value</u>. The terms of the Indebtedness authorized by this Interim Order are for reasonably equivalent value and fair consideration.

12. <u>Collateral Diminution</u>. Any diminution in the value of the Collateral which is sufficient to cause all or any part of the Indebtedness to become unsecured ("Collateral Diminution") shall be and hereby is (a) deemed a claim entitled to priority pursuant to Section 507(b) of the Bankruptcy Code following notice and hearing, and (b) deemed part of the amount which must be paid to the Lender in order to adequately protect its interest in the Collateral ("Adequate Protection Amount") (reference to the Indebtedness shall be deemed to include the Adequate Protection Amount).

13. <u>The Liens</u>. The liens granted by the Debtor to Brooks shall secure the Indebtedness as specified in the Loan Documents. The liens granted to Brooks shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered and shall be valid and enforceable against any trustee appointed in the Debtor's case, upon the conversion of the case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing ("Successor Cases") and/or upon the dismissal of the Case. The liens granted to Brooks to secure post-petition indebtedness shall not be subject to Sections 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552(b)(1) of the Bankruptcy Code, or, if approved in the Final Order, Section 506(c)

12

of the Bankruptcy Code. No other lien or security interest having priority superior or *pari passu* to that granted under this Interim Order to the Lender shall be granted while any portion of the Indebtedness remains outstanding except (i) for Roll Over liens granted to Secured Creditors as adequate protection for the use of Cash Collateral and who had superior liens prior to the Petition Date, (ii) upon the prior written consent of the Lender, or (iii) to the extent the Indebtedness is paid in full and any commitments of Brooks are terminated.

14. <u>Super-Priority Administrative Claim</u>. The Indebtedness, pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute an allowed Superpriority Claim (the "DIP Superpriority Claim") and be payable from and have recourse to all Collateral. Except as provided in the Loan Documents, this Interim Order, and the Budget, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 329, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or an a parity with the liens and the DIP Superpriority Claim or the Indebtedness, or with any other claims of Brooks arising hereunder; provided, however, the DIP Superpriority Claim granted to the Lender hereunder shall be subject to amounts required to be paid to the United States Trustee for the Western District of New York.

15. <u>Liens on Unencumbered Assets</u>. The liens granted herein and in the Loan Documents to secure the Indebtedness shall have, pursuant to the provisions of Section 364(c)(2) of the Bankruptcy Code, first priority liens on any of the Debtor's assets (excluding any claim arising under Sections 544, 547, 548, or 549 of the Bankruptcy Code, however) that are not subject to pre-petition perfected liens with priority over all administrative and priority expenses incurred in this bankruptcy proceeding or subsequent Chapter 7 case into which this Chapter 11

058618.00012 Business 12306463v1

case may be converted, including without limitation expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, and, shall at all times be senior in priority to the rights of the Debtor, its creditors other than Brooks or the successor in interest of the Debtor or its creditors, including without limitation any trustee appointed in this bankruptcy proceeding and any trustee in a case under Chapter 7 of the Bankruptcy Code into which this Chapter 11 case may be converted. Except as expressly provided in the preceding sentence, no other claim having a priority superior or *pari passu* to that granted by this paragraph to the Lender shall be granted while any portion of the Indebtedness remains outstanding except, (i) upon the prior written consent of the Lender, or (ii) to the extent all the Indebtedness is paid in full and any commitments of the Lender are terminated.

16. <u>No Post-Petition Obligations</u>. Other than Court approved fees and expenses of professionals retained by the Debtor or any Creditors' Committee, the Debtor shall incur no post-petition indebtedness except as incurred in the ordinary course or as permitted by this Interim Order or in accordance with the Budget, unless mutually agreed by Brooks and the Debtor and approved by the Court. The Debtor shall incur no other post-petition obligations for borrowed money pursuant to Sections 364(c) or (d) of the Bankruptcy Code, and shall grant no post-petition liens other than to Secured Creditors, or super-priority claims, other than to the Secured Creditors, except as may be mutually agreed by Brooks and the Debtor and/or as approved by the Court. Nothing contained herein shall be interpreted to prohibit the Debtor from remitting the amounts required by law to the Office of the United States Trustee.

17. <u>Adequate Protection for Use of Cash Collateral</u>. Pursuant to Sections 361(2), 363(e), and 506 of the Bankruptcy Code, in order to provide adequate protection of the Secured Creditors' interests under applicable law in the Cash Collateral against diminution in the value of

14

the collateral ("Cash Collateral Diminution") caused by the Debtor's use of Cash Collateral pursuant to this Order, the Debtor grants, and the Secured Creditors are hereby granted, roll-over security interests in the Debtor's post-petition acquired assets of the same type, and to the same extent, validity, and priority as the Secured Creditors hold on the Petition Date (other than any avoidance actions under Sections 544, 547, 548, or 549 of the Bankruptcy Code) (the "Roll-Over Liens"), Such Roll-Over Liens shall be (i) in addition to all security interests, liens, and rights of setoff existing in favor of the Secured Creditors on the Petition Date, (ii) valid, perfected, enforceable liens, and effective as of the Petition Date without any further action by the Debtor or the Secured Creditors and without the execution, filing or recordation of any document otherwise required under applicable law for granting and perfecting security interests and liens, and (iii) security for the use of Cash Collateral and as protection against Cash Collateral Diminution. Notwithstanding the foregoing, the Debtor is hereby authorized and directed at its expense to execute, file, and record any security agreements, financing statements, instruments, or other documents as may be reasonably requested by the Secured Creditors to otherwise evidence and perfect the Roll-Over Liens. The security interests and liens granted pursuant to this Order shall be binding upon the Debtor, any successor in interest to the Debtor or its assigns, or any Chapter 11 trustee or Chapter 7 trustee if the case is converted to a case under Chapter 7 of the Bankruptcy Code, and creditors who have or may hereafter extend credit to the Debtor or its estate. The Roll-Over Liens shall have the same extent, validity and priority as the Secured Creditors' respective pre-petition liens. With the exception of the priority of the Adequate Protection Amount, no other liens or claims are or will be prior to or on parity with the liens or claims of the Secured Creditors with respect to the Roll-Over Liens (unless authorized by the

15

Court), provided that such security interests shall be subject and subordinate to fees payable pursuant to 28 U.S.C. Section 1930.

18.    Diminution. If the Secured Creditors shall have any claim against the Debtor on account of Collateral Diminution, arising from the post-petition use of the pre-petition collateral, the Cash Collateral, or the collateral subject to the Roll-Over Liens, then following notice and a hearing, pursuant to Bankruptcy Code Section 507(b), such claim shall be allowed as an superpriority administrative claim under Section 503(b)(1) of the Bankruptcy Code having priority over any and all administrative expenses specified in Section 507(a)(1), but which shall be subordinate to the Adequate Protection Amount. Except as provided herein, such claims shall have priority over all other costs and expenses of the kind specified in or ordered pursuant to Sections 503(b) or 507(a) of the Bankruptcy Code, provided, however, that such claims shall not supersede Chapter 7 trustee fees pursuant to Section 726(a) of the Bankruptcy Code or the priority of claims of the Office of the U.S. Trustee pursuant to 28 U.S.C. Section 1930 nor will such super-priority claims attach to the proceeds of any avoidance actions under Sections 547, 548, or 549 of the Bankruptcy Code.

19.    Nothing herein shall be deemed to be a waiver by the Secured Creditors of any other rights they may have under applicable law in or against the Debtor's interests in property, including, but not limited to, setoff and recoupment rights, which rights the Secured Creditors expressly reserve. The Secured Creditors shall not be subject to any requirement for marshaling of assets.

20.    Nothing herein shall be deemed to prevent the Secured Creditors from seeking to terminate the use of Cash Collateral for any breach by the Debtor of the terms hereof or to obtain relief from the automatic stay or to assert any other rights, claims, remedies, or defenses

available to them, nor shall anything contained herein deprive the Debtor or any other party in interest of the right to oppose any such action.

21. Nothing herein shall preclude any party in interest (including a Chapter 7 trustee or a Chapter 11 trustee) from challenging the validity, priority or enforceability of the pre-petition liens and security interests asserted by the Secured Creditors or prosecuting any other claim or cause of action against the Secured Creditors, nor shall the Secured Creditors be precluded from asserting that they are not adequately protected, requesting additional adequate protection or making any contention respecting valuation of collateral or the amount of their claims.

22. <u>No Filing or Recording Necessary</u>. All agreements, security interests, and liens contemplated or granted by this Interim Order and/or the Loan Documents are effective and perfected as of the commencement of this bankruptcy proceeding without further filing or recording by the Debtor or Secured Creditors in compliance with any state or federal law. The Debtor and Secured Creditors will not be required to file financing statements or other documents in any jurisdiction or take any other actions in order to perfect its security interests and liens granted under or pursuant to this Interim Order. If the Debtor or Secured Creditors, in their sole discretion, choose to file any financing statements, or other documents to otherwise confirm perfection of such security interests and liens, all such documents shall be deemed to have been filed or recorded on the Petition Date immediately upon the filing of the petition commencing this bankruptcy proceeding. However, the failure of Debtor to execute any such documentation, or the failure of one or more of the Secured Creditors otherwise to attach or perfect its security interests granted hereunder in accordance with state or federal law, shall in no way affect the validity, perfection, or priority of the security interests, and liens granted to the

17

Secured Lenders pursuant to this Interim Order. The Secured Lenders are authorized to file or record this Interim Order in lieu of any financing statement or other document which may otherwise be specified by applicable law, to reflect the above security interests and liens, and all recording officers are hereby directed to accept this Interim Order for filing without requiring the payment of any filing or recording tax, stamp tax or similar tax.

23.   Binding Effect of Order.   Subject to the provisions herein, the terms and conditions of this Interim Order relating to the liens and priorities granted to the Secured Creditors herein shall be binding upon the Debtor, its creditors, and all other parties in interest, and all successors in interest thereof, including, without limitation, any Chapter 11 trustee that may be appointed in this bankruptcy proceeding or any trustee in cases under Chapter 7 of the Bankruptcy Code into which this Chapter 11 case may be converted. This binding effect is an integral part of this financing transaction.

24.   Section 506 Assessment.   No administrative claims, including the claims for professional fees and expenses, the professional fees of any committee appointed pursuant to Section 1102 of the Bankruptcy Code or the reimbursement of expenses of the members of such committee, shall be assessed, charged against or attributed to Brooks, the Secured Creditors or against either of their collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code, or otherwise, and Brooks has not consented or agreed to permit any such amounts to be paid from the Collateral. This provision shall not be read to preclude the Debtor's payment of such administrative expenses and/or allowed professionals fees in the ordinary course of business.

25.   Limited Modification of Automatic Stay.   The automatic stay presently in effect in this bankruptcy proceeding pursuant to Section 362 of the Bankruptcy Code is hereby

modified, with respect to the Secured Creditors, to the extent necessary to execute and render effective the Loan Documents and any other instruments or documents to be executed in connection with the transactions approved in this Interim Order and to carry out the provisions of this Order.

26.    Events of Default.  Upon an Event of Default (as defined in the Loan Agreement) and following ten (10) days' written notice to the Debtor, Debtor's counsel, the United States Trustee, and counsel for any Creditors Committee appointed in this case or if no committee is appointed the twenty (20) largest unsecured creditors, Brooks may seek to enforce any and all rights and remedies against the Debtor under the Loan Documents but only in accordance with the terms of any order entered by the Bankruptcy Court granting a motion to modify the automatic stay.

27.    Additional Authority.  The Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, additional security agreements, mortgages, and financing statements) and to pay fees which may be required pursuant to the terms of this Interim Order or the Loan Documents including, without limitation, (a) the execution and performance of the Loan Documents, and (b) the payments to Brooks of amounts provided for in the Loan Documents including, without limitation, attorneys' fees and disbursements incurred in the transactions giving rise to the Post-Petition Indebtedness and the preparation and negotiation of the Loan Documents.

28.    Effect of Future Modification of Order.  No subsequent stay, modification, termination, failure to extend the term, or vacation of this Interim Order shall affect, limit, or modify the validity of any Post-Petition Indebtedness, any claim for the amount of any Collateral Diminution or Cash Collateral Diminution, or any superpriority claim granted hereunder owed

by the Debtor to Brooks or any other Secured Creditor incurred pursuant to this Order prior to the date hereof or otherwise, nor shall any such stay, modification, or vacation limit, affect, or modify the validity, enforceability, or perfection of any security interest, lien, or priority granted or reaffirmed in connection therewith. Notwithstanding any such stay, modification, or vacation of this Interim Order, all rights of the Debtor, to the extent applicable, and the Secured Creditors, up to and including the date of such stay, modification, or vacation of this Interim Order shall be governed in all respects by the provisions of this Interim Order and, as applicable, the Loan Documents, including, without limitation, all security agreements entered into between the Debtor and Brooks, and the Debtor and the Secured Creditors shall be entitled to all the rights, privileges, and benefits thereof and hereof, including the security interests, liens, and priorities granted herein. All advances under the Loan Documents are made in reliance on this Interim Order, and the indebtedness evidenced by such new advances cannot be subordinated (for any actions prior to the date thereof), lose their superpriority status, or be deprived of the benefit of the liens and priorities granted to Brooks, by any subsequent order in this bankruptcy proceeding. The provisions of this Interim Order dealing with Post-Petition Indebtedness shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of Section 1129(b) of the Bankruptcy Code).

29.    Effect of Dismissal.    No order shall be entered upon a motion of the Debtor seeking to dismiss this bankruptcy proceeding except on notice to Secured Creditors and an opportunity to be heard unless, prior to such entry, the Secured Lenders have consented to dismissal. In the event the Chapter 11 case is dismissed, converted, or otherwise superseded, neither the entry of this Interim Order nor the dismissal or conversion of the Chapter 11 case shall affect the Secured Creditors' rights which shall be and remain in full force and effect as if

058618.00012 Business 12306463v1

this Chapter 11 case had not been dismissed, converted, or superseded. Furthermore, notwithstanding any such dismissal, conversion, supersession, or consolidation, all of the terms and conditions of this Interim Order and the agreements executed hereunder, including the security interests and liens and the superpriority granted hereunder, shall remain in full force and effect without the need for any filing with any state or local jurisdiction.

30.     Objection Overruled.   Except to the extent specifically set forth herein, all objections to the entry of this Interim Order are hereby overruled.

31.     Effect of Order.   In light of the Findings set forth above, in the event of any appeal of this Interim Order, any credit extended hereunder shall be entitled to the benefits of Section 364(e) of the Bankruptcy Code and Brooks shall be granted all rights and remedies hereunder, unless the party to such appeal shall have obtained a stay of this Interim Order pursuant to the Bankruptcy Code and the applicable FRBP.

32.     Deemed Filing of Motion.   The Motion shall be deemed for all purposes to have been properly filed in this bankruptcy proceeding.   This Interim Order shall be deemed to have been issued and entered in this case.   The Clerk of the Bankruptcy Court is directed to immediately enter this Interim Order in the docket of this case.

33.     Inconsistencies.   In the event of any irreconcilable inconsistency between this Interim Order and any agreement heretofore or hereafter entered into by or between the Debtor and Brooks, the terms of this Interim Order shall govern and control.

34.     Order Effective Immediately.   This Interim Order is immediately valid and fully effective upon its issuance.

35. <u>Reservation of Rights</u>. The Debtor and the Secured Creditors hereby reserve their respective rights, pending the Final Hearing on the Motion, with respect to the relief sought in the Motion as provided in this Interim Order.

36. <u>Expiration of Cash Collateral Authority</u>. The Debtor's authority to use Cash Collateral Shall expire on January 14, 2014 at 5:00 p.m. absent further Court order authorizing the use of Cash Collateral or the Secured Creditors written consent for use of Cash Collateral beyond January 14, 2014.

37. <u>Post-Petition Borrowing</u>. Notwithstanding anything to the contrary contained herein or the budget annexed hereto, the Debtor must comply with the terms of the Operating Line Agreements with respect to post-petition borrowing requests.

38. <u>Notice of Entry</u>. The Debtor shall serve a copy of this Interim Order not later than 5:00 p.m. on December 27, 2013 by first class mail upon counsel for Brooks, upon the Secured Lenders, the United States Trustee, the Attorney General of the State of New York, any Creditors' Committee appointed in this case, and, if no Creditors' Committee has been appointed, each of the Debtor's 20 largest unsecured creditors. Service as provided above shall be deemed good and sufficient service of this Interim Order.

39. <u>Final Hearing</u>. A hearing approving the relief requested in the Motion on a final basis shall be heard before this Court at the United States Bankruptcy Court, Part II, 300 Pearl Street, Buffalo, New York on January 13, 2014 at 11:45 a.m. or as soon thereafter as counsel may be heard.

*(Signature Page to Follow)*

22

Dated:    Buffalo, New York
           December 24, 2013

HON. CARL L. BUCKI
UNITED STATES BANKRUPTCY JUDGE

**AGREED AND APPROVED AS TO FORM AND CONTENT:**

**HODGSON RUSS LLP**
*Attorneys for Brooks*

By: _____



**MENTER, RUDIN & TRIVELPIECE, P.C.**
*Attorneys for Debtor*

By: _____

F I L E D

DEC 2 4 2013

BANKRUPTCY COURT
BUFFALO, NY

058618.00012 Business 12305210v1

Case 1-13-13294-CLB   Doc 39   Filed 12/24/13   Entered 12/24/13 12:04:02   Desc Main
Document   Page 23 of 26

# SCHEDULE "1"

## (Operating Budget)

TLC Cash Flow Projection
6 Weeks, Commencing 12/22/13

| Time Frame | | Deposits | | Payments | | | | | Account Balance | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Week | Description | Amount | Description | Operating Expenses | Payroll | Other | Total | Beginning | Net Flow | Ending |
| 12/20/2013 | | Opening Balance | | | | | | | 747,485.38 | | 747,485.38 |
| 12/22/2013 | Week 1 | Medicaid | 80,255.90 | Payroll | | 380,000.00 | | 380,000.00 | 747,485.38 | (474,744.10) | 272,742.28 |
| | | Medicare | 60,000.00 | Payroll Taxes and related costs | | 195,000.00 | | 195,000.00 | | | |
| | | Blue Cross | 60,000.00 | Health Insurance | 35,000.00 | | | 35,000.00 | | | |
| | | All Other | 85,000.00 | Other Operating Expenses | 150,000.00 | | | 150,000.00 | | | |
| | | Total | 285,255.90 | Total | 185,000.00 | 575,000.00 | | 760,000.00 | | | |
| 12/29/2013 | Week 2 | Medicaid | 109,120.90 | Health Insurance | 75,000.00 | | | 75,000.00 | 272,742.28 | 15,243.31 | 287,985.59 |
| | | Medicare Including PIP | 161,004.00 | Other Operating Expenses | 300,000.00 | | | 300,000.00 | | | |
| | | Blue Cross | 50,000.00 | | | | | - | | | |
| | | All Other | 80,118.41 | | | | | | | | |
| | | Total | 390,243.31 | Total | 375,000.00 | - | | 375,000.00 | | | |
| 1/5/2014 | Week 3 | Medicaid | 75,430.72 | Payroll | | 380,000.00 | | 380,000.00 | 287,985.59 | (464,378.95) | (176,393.36) |
| | | Medicare | 60,000.00 | Payroll Taxes and related costs | | 195,000.00 | | 195,000.00 | | | |
| | | Blue Cross | 95,000.00 | Health Insurance | 60,000.00 | | | 60,000.00 | | | |
| | | All Other | 140,190.33 | Other Operating Expenses | 200,000.00 | | | 200,000.00 | | | |
| | | Total | 370,621.05 | Total | 260,000.00 | 575,000.00 | | 835,000.00 | | | |
| 1/12/2014 | Week 4 | Medicaid | 95,000.00 | Health Insurance | 20,000.00 | | | 20,000.00 | (176,393.36) | 274,004.00 | 97,610.64 |
| | | Medicare Including PIP | 161,004.00 | Other Operating Expenses | 200,000.00 | | | 200,000.00 | | | |
| | | Blue Cross | 85,000.00 | | | | | - | | | |
| | | All Other | 153,000.00 | | | | | | | | |
| | | Total | 494,004.00 | Total | 220,000.00 | - | | 220,000.00 | | | |
| 1/19/2014 | Week 5 | Medicaid Including Large Monthly LTHHC Payment | 155,000.00 | Payroll | | 380,000.00 | | 380,000.00 | 97,610.64 | (452,000.00) | (354,389.36) |
| | | Medicare | 60,000.00 | Payroll Taxes and related costs | | 195,000.00 | | 195,000.00 | | | |
| | | Blue Cross | 60,000.00 | Health Insurance | 35,000.00 | | | 35,000.00 | | | |
| | | All Other | 83,000.00 | Other Operating Expenses | 200,000.00 | | | 200,000.00 | | | |
| | | Total | 358,000.00 | Total | 235,000.00 | 575,000.00 | | 810,000.00 | | | |
| 1/26/2014 | Week 6 | Medicaid | 95,000.00 | Health Insurance | 75,000.00 | | | 75,000.00 | (354,389.36) | 184,004.00 | (170,385.36) |
| | | Medicare Including PIP | 161,004.00 | Other Operating Expenses | 200,000.00 | | | 200,000.00 | | | |
| | | Blue Cross | 60,000.00 | | | | | - | | | |
| | | All Other | 143,000.00 | | | | | | | | |
| | | Total | 459,004.00 | Total | 275,000.00 | - | | 275,000.00 | | | |
| 2 Week | | | 675,499.21 | | 560,000.00 | 575,000.00 | | 1,135,000.00 | | (459,500.79) | 287,985.59 |
| 4 Week | | | 1,540,124.26 | | 1,040,000.00 | 1,150,000.00 | | 2,190,000.00 | | (649,875.74) | 97,610.64 |
| December Remaining | | | 675,499.21 | | 560,000.00 | 675,000.00 | | 1,135,000.00 | | (459,500.79) | 287,985.59 |
| January Est | | | 1,681,629.05 | | 990,000.00 | 1,150,000.00 | | 2,140,000.00 | | (458,370.95) | (170,385.36) |

| | | 12/1/13 - 12/7/13 | 12/8/13 - 12/14/13 | 12/15/13 - 12/21/13 | 12/22/13 - 12/28/13 | 12/29/13 - 1/4/14 | 2/2/14 - 2/8/14 | 2/9/14 - 2/15/14 | 2/16/14 - 2/22/14 | 2/23/14 - 3/11/14 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Starting Cash Balance** | | | | | | | | | | |
| Heal | | 1,626,000 | $1,207,675.00 | $534,100.00 | $268,025.00 | $1,950.00 | $1,950.00 | 420,275 | 1,093,850 | 1,359,925 |
| **Receipts** | | | | | | | | | | |
| FEMA | | - | $0.00 | $0.00 | $0.00 | $0.00 | $418,325.00 | 673,575 | 266,075 | 266,075 |
| Total | | - | $0.00 | $0.00 | $0.00 | $0.00 | $418,325.00 | 673,575 | 266,075 | 266,075 |
| **Payments** | | | | | | | | | | |
| HEAL | | 266,075 | $266,075.00 | $266,075.00 | $266,075.00 | $0.00 | $0.00 | - | - | |
| Consultants | | 152,250 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | - | - | |
| Equipment | | - | $407,500.00 | $0.00 | $0.00 | $0.00 | $0.00 | - | - | |
| Total | | 418,325 | $673,575.00 | $266,075.00 | $266,075.00 | $0.00 | $0.00 | - | - | - |
| Net Cash IN/OUT | | ($418,325) | ($673,575.00) | ($266,075.00) | ($266,075.00) | $0.00 | $418,325.00 | 673,575 | 266,075 | 266,075 |
| **Closing Bank Balance** | | $1,207,675 | $534,100.00 | $268,025.00 | $1,950.00 | $1,950.00 | $420,275.00 | 1,093,850 | 1,359,925 | 1,626,000 |

**Construction**

| | | | |
|---|---|---|---|
| Site Work/Foundation | C101 | $191,000.00 | $47,750.00 |
| General Construction | C102 | $473,900.00 | $118,475.00 |
| Plumbing | C103 | $53,400.00 | $13,350.00 |
| Mechanical | C104 | $240,000.00 | $60,000.00 |
| Electrical | C105 | $106,000.00 | $26,500.00 |
| | | | $266,075.00 |

**Equipment**

| | |
|---|---|
| Mammo | $224,500.00 |
| Ultrasound | $155,000.00 |
| PT/Cardiac Rehab | $28,000.00 |

**Fees**

| | |
|---|---|
| Architectural | $94,500.00 |
| Consultants | $10,500.00 |
| Construction Management | $47,250.00 |
| | $1,624,050.00 |